Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1544 | DATE | 3/18/2003 |
| CASE TITLE | McDonald vs. NE IL Reg. Commuter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [doc. 22-1] is denied. Defendant's motion to strike [doc. 38-2] is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | MAR 19 2003 date docketed | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | | 50 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 3/18/03 date mailed notice | |
| | Copy to judge/magistrate judge. | 03 MAR 18 PM 1:56 | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES L. MCDONALD, )
)
Plaintiff, )
)
) No. 01 C 1544
v. )
)
NORTHEAST ILLINOIS REGIONAL, )
REGIONAL COMMUTER RAILROAD )
CORPORATION, d/b/a METRA, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, Judge:

Plaintiff James L. McDonald injured his ankle while working for Defendant Metra. He brought suit under the Federal Employer's Liability Act ("FELA"), alleging that his injury was due to Metra's negligence. Metra moves for summary judgment, arguing that the undisputed material facts show that it is entitled to judgment as a matter of law because it did not breach any duty of care that caused Plaintiff's injury. For the reasons set forth herein, Metra's motion is denied.

### FACTS

**I.  The Parties**

Defendant Metra is a public corporation that operates train service throughout Northeast Illinois and part of Wisconsin. (R. 23-1, Def.'s Statement of Uncontested Facts ¶1.) Plaintiff McDonald worked for Metra as an electrician at its 49th Street coach shop. (*Id.* ¶¶2-3.)

50

## II. The Snowstorm

On March 9, 1998, eleven inches of snow accumulated in Chicago between the early morning hours and the early afternoon. On the eve of the snowfall, Metra received notice from its consulting meteorologists that the storm would begin between 1:00 and 3:00 a.m. (R. 25-1, Pl.'s Add'l Material Facts ¶1.) The notice indicated that the storm would pose "significant trouble." (*Id.* ¶2.) Metra's procedures require a snow removal team to be called out when snowfall is greater than one inch. (*Id.* ¶7.) No snow removal team was called out until the employees started to arrive at work between 6:00 and 6:30 a.m. (*Id.* ¶9.) The weather report from Chicago's Midway Airport indicates that the snowstorm began in the region at approximately 3:00 a.m. (R. 23-1, Def.'s Statement of Uncontested Facts, Ex. F.)

## III. The Incident

McDonald woke up at 5:00 a.m on the day of the storm. A great deal of snow had already begun falling at the time, although the accumulation at the time had not yet reached an inch. (*Id.* ¶5.) McDonald arrived at work that morning at 6:30 to find that Metra's coach shop had no power. (*Id.* ¶7.) McDonald and two co-workers went to 51st Street to try to restore power to the coach shop. (R. 23-1, Def.'s Statement of Uncontested Facts ¶15.) Unable to do so, the three returned to the coach shop to decide how to use a locomotive to provide auxiliary power to the building. (*Id.*) McDonald then left again with his supervisor and another co-worker to attach cables from a locomotive to the building. (*Id.*)

McDonald's supervisor began to drive a forklift in order to carry the cables on a pallet. (*Id.* ¶17.) Unfortunately, the forklift was not designed for use on snow and became stuck a few feet from the building. (*Id.*) McDonald and his co-worker pushed the forklift until it started

2

moving again. (*Id.* ¶18.) Either while he still had his hands on the forklift or as he was removing his hands from it, McDonald's left ankle gave way on the edge of a concrete apron. (*Id.* ¶19.) Because the snow covered the entire area of the apron, McDonald could not see its edge. He instead stepped on a spot where no ground supported the outside of his foot, which caused McDonald to turn and injure his ankle. (*Id.*, Ex. B at 44.) Although Metra had started removing some snow at its facilities at the time of the incident, it had not begun at the site where McDonald suffered the injury. (*Id.* ¶22.)

## IV. Metra's Snow Removal Priorities

Metra sets priorities on which areas of its property to remove snow. Metra first removes snow from areas that are "critical" to its operation. (R. 23-1, Def.'s Statement of Uncontested Facts ¶8.) Metra views critical areas to be its parking lots and entrance ways, because of the number of employees that need to use these areas. (*Id.*, Ex. C at 13.) Metra also puts a priority on removing snow from the coach yard, because some of its large snow removal equipment cannot fit between the tracks to remove the snow once the trains are parked. (*Id.*) Additionally, Metra emphasizes removing snow from the concrete aprons around the coach shop to make way for forklifts to access and deliver material from the storehouse. (*Id.* at 14; Ex. E at 33.) Snow removal can take upwards of six hours. (*Id.*, Ex. E. at 32.)

## STANDARDS

Summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica Indiana*, 259 F.3d 619, 625 (7th Cir.

3

2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court must view all evidence and draw all reasonable inferences in the light most favorable to Plaintiff, as the non-moving party. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

## ANALYSIS

Under FELA, "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. The intent of FELA is to provide broad remedial measures for railroad employees. *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 831 (7th Cir. 1994). Under FELA, the railroad will be held liable if the employer's "negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Defendant is entitled to judgment as a matter of law only where "there is a complete absence of probative facts to support the conclusion reached." *Heater v. Chesapeake & Ohio Ry. Co.*, 497

4

F.2d 1243, 1247 (7th Cir. 1974) (quoting *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946)).

Although the "quantum of evidence" needed to establish liability is much less than in common law negligence, *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990), a plaintiff must bring some evidence of the defendant's negligence to survive a motion for summary judgment. *Lisek*, 30 F.3d at 831. Plaintiff must also show that the employer's negligence caused his injury. *Heater*, 497 F.2d at 1246. Plaintiff argues that Metra is liable for negligence for two reasons: (1) it failed to provide him with a safe place to work because it did not remove snow from the apron before the time of his fall and (2) it improperly operated a forklift in the snow. Defendant takes different approaches in attacking these two theories of recovery.[1] First, it claims that although there is a causal connection between its failure to remove the snow and Plaintiff's injury, it did not breach its duty to provide Plaintiff with a reasonably safe place to work as a matter of law. Second, Metra claims that, although it breached a duty in its operation of the forklift, it is not liable for negligence for that improper use because there is no causal connection between the forklift's operation and Plaintiff's injury.

I.   **There Is A Question Of Fact As To Whether Defendant Breached Its Duty To Provide Plaintiff With A Safe Place To Work**

A railroad has a duty to provide its employees with a safe place to work. *Shenker v.*

---

[1] Defendant argues that McDonald is to blame for his injury because he was negligent in walking on the apron without being able to see the edge. This is not a proper ground for summary judgment because FELA does not recognize contributory negligence as a bar to recovery. *See* 45 USC § 53 ("The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."). After Plaintiff correctly pointed out this principle, Defendant did not raise the issue in its reply.

5

*Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 1671-72, 10 L.Ed.2d 709 (1963). The railroad is held to the standard of what a reasonable and prudent person would have done under the circumstances. *Stone v. New York, C., & St. L. R.R. Co.*, 344 U.S. 407, 409, 73 S.Ct. 358, 359, 97 L.Ed. 441 (1953). If "fair-minded men" could reach different conclusions on whether the railroad was negligent, it is appropriate to leave the issue to the jury. *Id.* at 409.

Defendant argues that it was not under a duty to clear the snow from the site of Plaintiff's injury before the incident. FELA plaintiffs have littered federal courts with claims that occurred during times of inclement weather. The Seventh Circuit long ago explained the duty of the railroad in this context:

> It is a general rule that a railway company is not liable to its employees for injuries resulting from climatic conditions, such as ice and snow; but within its yard limits it must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form, and location as to be a menace to the safety of its employees working in its yards. . . . The duty of providing a reasonably safe place fo the carrying on of the work is a continuing one and must be exercised whenever circumstances demand it.

*Anderson v. Elgin, Joliet & E. Ry Co.*, 227 F.2d 91, 95-96 (7th Cir. 1955) (quoting *Fort Worth v. Denver City R. Co. v. Smith*, 206 F.2d 667, 669 (5th Cir. 1953)); *see also Knight v. Grand Victoria Casino*, No. 98 C 8439, 2000 WL 1898843, at *1 (N.D. Ill. Dec. 28, 2000) (defendant may be liable for accumulation of ice or snow as part of its duty to provide its employees with a safe workplace). The Seventh Circuit has addressed a case with similar facts, indistinguishable arguments, and identical legal application in *Barrett v. Toledo, Peoria W. R.R.. Co.*, 334 F.2d

803 (7th Cir. 1964).[2]

First to the facts. In *Barrett*, the plaintiff employee was walking on an area that was covered with three to four inches of snow, which had accumulated during a severe storm that occurred in the preceding hours. *Id.* He was injured when he fell after stepping on an accumulation of ice beneath the snow. *Id.* After the trial court entered judgment in favor of the employee, the defendant appealed, claiming that there was no proof of negligence on its part. The Seventh Circuit rejected Defendant's argument that it was not negligent as a matter of law, explaining:

> Defendant's contention is based in the main upon the fact that there had been a violent wind and snow storm, with the snow constantly accumulated for many hours prior to the accident, and that there was nothing which it could reasonably be expected to do to avoid the situation alleged to have caused plaintiff to slip and fall. . . . The Supreme Court has consistently held that the issue of negligence must be resolved by the jury.

*Id.* at 804.

Clearly, the facts here show that a jury must determine whether Defendant was negligent. A strong snow storm caused the accumulation of enough snow so that McDonald could not see the edge of the apron. There is evidence that Metra was on notice on the eve of the accident that a heavy storm was going to occur in the early morning. Although the snow began falling before 5:00 a.m., Metra had not begun to make preparations for its removal until 6:30 a.m. Metra had not yet cleared the snow from the area where Plaintiff's incident occurred. Because of the accumulated snow, McDonald could not see the edge of the apron. Upon taking a step, the

---

[2] Although Plaintiff cites to *Barrett* in his response, Metra makes no effort to distinguish the case in its reply.

7

outside of his foot turned because there was no ground to support it.

A jury could find that Defendant was negligent in a number of ways in dealing with the snow buildup. Under FELA, a defendant has a duty to act reasonably given not only the existing conditions, but the anticipated ones as well. *See Gallick v. Baltimore & O. R. Co.*, 373 U.S. 108, 118, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) ("defendant's duties are measured by what is reasonably foreseeable under like circumstances – by what in the light of the facts then known, should or could reasonably have been anticipated."). Providing McDonald with all reasonable inferences, a jury could find that Metra acted below the standard of reasonableness not only once the snow removal began, but also when it failed to anticipate the conditions that would meet its workers by taking precautions overnight – rather than waiting until employees arrived in the morning – after it received notice of the heavy storm. *Cf. Anderson*, 227 F.2d at 97 ("whether such care required it to take action prior to the cessation of the storm was a matter for the jury's consideration.").

The similarity in *Barrett* goes beyond the facts and into the parties' arguments. Here, Defendant asks: "Were Metra's actions reasonable under the circumstances of the day? Plaintiff's injury occurred . . . when the Chicago area was experiencing blizzard-like conditions." (R. 30-1, Def's Reply at 4.) The *Barrett* defendant asked a similar question: "Was it imprudent, unreasonable and negligent on [defendant's] part that in this large switching yard and under these inclement weather conditions it did not discover the ice and remove it?" *Barrett*, 334 F.2d at 804. The Seventh Court responded in *Barrett*: "There is hardly room for doubt . . . that the question posed is for the jury; certainly it cannot be answered in the negative as a matter of law." *Id.* It is clear from *Barrett* that the Court must allow a jury to answer Defendant's question as a matter of fact, instead of deciding this issue as a matter of law at the summary judgment stage.

Defendant relies on a Third Circuit case from 1947 to support its position that it is entitled to judgment as a matter of law. In *Raudenbush v. Baltimore & O. R. Co.*, a light snowfall had left a "very, very thin coating of snow." 160 F.2d 363, 366 (3d Cir. 1947). Those weather conditions caused the decedent to slip and fall between moving railroad cars. *Id.* at 365. The Court held that defendant had not breached its duty of providing a reasonably safe place to work as a matter of law. Two factors explain why *Raudenbush* does not compel the same finding by this Court.

First, and most importantly, the Third Circuit ruled on *Raudenbush* before the Supreme Court had fully articulated its FELA standards. Once again, the Court turns to *Barrett* to fully explain this point. The Seventh Circuit there chiefly relied on Supreme Court cases that were handed down after the Third Circuit's opinion in *Raudenbush* and recognized that its ruling would have been different before these Supreme Court holdings. *Barrett*, 334 F.2d at 804 (court would have agreed with defendant had it heard the case twenty years before) (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 61, 69 S.Ct. 413, 417, 93 L.Ed. 497 (1949) (reversing a holding that a railroad company was not negligent for the slippery condition of a walkway as a matter of law because "the issue of negligence is one for juries to determine."); *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 510, 77 S.Ct. 443, 450-51, 1 L.Ed.2d 493 (1957) ("Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury.")).

Second, the weather conditions at issue in *Raudenbush* and here are dissimilar. That the ground was only covered with a light amount of snow played a major role in the Third Circuit's

9

finding that the defendant was not negligent as a matter of law. The uncontested facts here show that there was a heavy snowfall that had accumulated to the degree that Plaintiff could not see where he was stepping. Therefore, even if *Raudenbush* were the controlling law, the facts would be sufficiently different to compel a different result. Accordingly, Metra is not entitled to judgment as a matter of law.

## II. There Is No Causal Connection Between The Improper Use Of The Forklift And Plaintiff's Injury

Plaintiff alleges that Defendant was negligent in that one of its employees improperly operated a forklift. The facts surrounding the use of the forklift are undisputed. The forklift was not designed for use in snow. The forklift became stuck and Plaintiff had to push it out of the snow. After it was already freed, and either as he was removing his hands from the forklift or while he still had his hands on the vehicle, he stepped on the edge of the apron and twisted his ankle.

It is clear that the improper use of the forklift is irrelevant. There is no evidence that the improper use of the forklift caused McDonald to fall or made him unstable. Plaintiff had already helped dislodge the forklift from the snow when he was injured. Plaintiff's only link to the injury and the improper use of the forklift is that the operation of the forklift preceded his injury. This is not a legally recognized concept of causation. Instead, it is a fallacy called *post hoc ergo propter hoc* (following this, therefore because of this). *See Porter v. Bangor & Aroostook R.R. Co.*, 75 F.3d 70, 71 (1st Cir. 1996) (calling it "poor logic"); *Mauntel v. Brisco*, No. 93 C 6579, 1995 WL 25298, at *8 (N.D. Ill. Jan. 18 1995) ("Such reasoning is fallacious."). Without the causal connection, Plaintiff's theory that Metra is liable for negligence because of the improper

use of the forklift cannot survive summary judgment. *See Williams v. National R.R. Passenger Corp.*, 161 F.3d 1061, 1063 (7th Cir. 1998) (plaintiff's negligence claim failed because he lacked evidence to link his blacking out in a lounge car to a breach of duty on the railroad's part).

## CONCLUSION

Defendant's motion for summary judgment is denied. A dispute of material fact exists as to whether Metra breached its duty to provide a reasonably safe place to work in failing to remove the snow from the apron before Plaintiff's injury. The Court also finds, however, that Plaintiff may not proceed with his theory that Defendant is liable for negligence based on its employee's improper use of the forklift. Plaintiff has not produced any evidence that shows that the use of the forklift was in any way connected to his injury.

DATED: March 18, 2003                ENTERED

                                     _____
                                     AMY J. ST. EVE
                                     United States District Judge